```
                    United States District Court
                      District of Massachusetts
```

|  |  |
|---|---|
| MICHAEL BRUCK )<br>      Plaintiff, )<br>                   )<br>     v.             )<br>                   )<br>MORGAN STANLEY SMITH BARNEY, LLC, )<br>MORGAN STANLEY & CO., LLC. )<br>      Defendants. ) | Civil Case No.<br>12-12005-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Michael Bruck ("Bruck") alleges that defendants Morgan Stanley Smith Barney, LLC and Morgan Stanley & Co., LLC (collectively "Morgan Stanley" or "defendants") created "an unlawful and fraudulent scheme to avoid the fiduciary duties imposed upon them" by the Investment Advisors Act ("IAA").

## I. Background

Bruck hired defendants in 2007 to manage his assets. He initially wired funds into two accounts over which he asserts defendants acknowledged they had a fiduciary duty. Defendants then used the money in the two original accounts to set up 17 accounts through which to manage his funds. Bruck asserts that one of those accounts was considered internally by defendants to be "non-fiduciary". As a result, Bruck alleges that defendants used this account to invest in "alternative investment funds",

all of which were either wholly owned by defendants or one of the defendants was a general partner in the fund.  Plaintiff allowed over 40 % of his portfolio to be transferred to this "side-pocket" account.  Bruck believes that defendants relied on the "non-fiduciary" nature of that account to conceal from him material facts including that the funds were being investigated by the SEC for insider trading and were generating fees in excess of profits.  Bruck alleges that, based on defendants false representations and material omissions, they received over $300,000 in fees from his account.

In October 2011, after Bruck had terminated his relationship with defendants for other reasons, he contacted their legal department to determine if, during the period he was waiting for his investments in various hedge funds defendants had set up to be sold, defendants had a continuing fiduciary duty.  Plaintiff asserts that he was then told by defendants that they had never had a fiduciary duty with regard to the 17th account because it was a brokerage rather than advisory account.

Plaintiff alleges violations of the IAA (Counts I-V, XII) as well as breach of fiduciary duty (Count VI), fraud (Count VI), Breach of Contract (Count VII), Negligence (Count VIII), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IX), Unjust Enrichment (Count X), Fraudulent Inducement (Count XI) and Violation of Chapter 93A (Count XIII).

Defendants move to dismiss the Complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court heard oral argument on the motion to dismiss at a scheduling conference on March 6, 2013, and took the matter under advisement.  Subsequently defendants moved to compel arbitration.

## II. Motion to Dismiss

### A.   Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must accept as true all factual allegations underlying the claim and draw all reasonable inferences in favor of the non-moving party. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  In considering the merits of a motion to dismiss, the Court may not look beyond the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the Complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

**B.   Analysis**

Defendants argue that the case should be dismissed on <u>res judicata</u> grounds. In December 2010, plaintiff filed an action in this District, <u>Bruck</u> v. <u>Morgan Stanley Smith Barney and Morgan Stanley & Co., Inc.</u>, Civil Action No. 1:10-cv-12199-RBC ("Bruck I"), alleging individual as well as class claims arising from misconduct in connection with investments in his accounts at Morgan Stanley. Specifically, plaintiff took issue with defendants' disclosures in 2007 and 2009 investor letters for investment funds in which plaintiff had invested that indicated that defendants were acting only as placement agents and not in a fiduciary capacity. Plaintiff claimed that the disclosures were an attempt by defendants to avoid their fiduciary duties under the IAA. On May 10, 2011, Magistrate Judge Collings granted defendants' motion to dismiss, holding that Plaintiff's claims were time-barred because they were not filed within a year of discovery of the alleged violation.

The doctrine of <u>res judicata</u> "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." <u>Airframe Systems, Inc.</u> v. <u>Raytheon, Co.</u>, 601 F.3d 9, 14 (1st Cir. 2010). An earlier federal court judgment gives rise to claim preclusion where 1) the earlier suit resulted in a final judgment on the merits, 2) the causes of action claimed in both suits are sufficiently

identical or related, and 3) the parties in both suits are sufficiently identical or closely related. Id.  Here, both the first and third prongs are clearly satisfied.  The analysis under the second prong turns on whether the two suits share a common nucleus of operative facts. Id. at 15.  There does appear to be significant overlap between the two suits.  The two actions concern the same investment advisor relationship and the same investment portfolio.

Plaintiff responds, however, that he could not have brought the claims alleged in the current case in Bruck I because he did not discover the allegedly fraudulent scheme that is the subject of the current Complaint until five months after Bruck I was dismissed.  Thus, despite the factual similarities, the Court is persuaded that the causes of action are not sufficiently identical to be precluded and thus declines to dismiss the case.

**III. Motion to Compel Arbitration**

Defendants move 1) to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act("FAA") 9 U.S.C. § 4 and 2) to stay the case pending arbitration pursuant to 9 U.S.C. § 3.

**A.   Legal Standard**

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to so submit.  AT&T Techs, Inc. v. Commc'ns Workers of

Am., 475 U.S. 643, 648 (1986).  Section 4 of the FAA allows a party aggrieved by another party's failure to arbitrate according to the terms of a written arbitration agreement to petition for a court order directing that the arbitration proceed.  9 U.S.C. § 4.  Whether parties agreed to submit a particular dispute to arbitration is an issue to be decided by the Court, not the arbitrator.  Id.

A presumption of arbitrability arises where a contract contains an arbitration clause.  AT&T Techs., 475 U.S. at 650. That presumption is particularly applicable where the arbitration clause at issue is broad in scope, such as where it provides for arbitration of "any" kind of controversy pertaining to the contract.  See id.  Under such agreements, parties should be required to submit their disputes to arbitration

> unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Id. (internal quotation and citation omitted).  If there are any doubts about coverage, the dispute should proceed to arbitration. See id.

When deciding a motion to compel arbitration, a court must determine whether

> i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.

Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)

(quoting Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F.Supp.2d 152, 155 (D.Me.1999)).

**B.   Analysis**

**1. Written Agreement to Arbitrate**

When plaintiff invested his funds with defendants in 2007 he executed account opening documentation.  Included in the Active Assets Account Applications ("Applications") was a clause entitled "Arbitration of Controversies" which required plaintiff to agree that

> all controversies between you or your principals or agents and Morgan Stanley or any of its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between the parties, whether entered into before or after the date the Account is opened, shall be determined by arbitration only.

The following statement also appeared above the signature line on the Applications:

> You understand that the Account is governed by the predispute arbitration clause . . . of the Active Assets Account Client Agreement. You acknowledge that you have received a copy of the Agreement, including the predispute arbitration clause.

As a result, it is clear that plaintiff willingly entered into an agreement that required arbitration and the first prong is satisfied.

-7-

### 2. Scope of Arbitration Agreement

Plaintiff asserts that the arbitration agreement does not apply because his claims arise out of either 1) a "master account" which plaintiff claims was closed prior to the alleged wrongs or 2) an "advisory" account for which defendants have not produced an arbitration agreement.

As an initial matter, it appears that plaintiff is incorrect in stating that the "master account" was closed in 2007 given that a 2009 performance report shows a balance in the account as of that date.  Furthermore, the Agreements include a clause stating that

> Closing an Account or terminating or restricting our services will not affect your obligations . . . This Agreement will continue to govern matters relating to your Account that arose before your Account was closed or that may arise later.

As a result, whether the account at issue was closed at the time of the alleged wrongdoing is immaterial.

Plaintiff's argument that a failure to produce documents relating to the "advisory" account pled in the Complaint also fails.  The broad language of the arbitration agreements Bruck signed include provisions covering "all controversies . . . arising out of or concerning . . . any of your accounts, orders or transactions" and the "performance or breach [of] any . . . agreement between the parties."  Each of plaintiff's claims clearly arise out of his accounts and the alleged breach thereof

and are thus within the scope of the arbitration agreements.

### 3. **Waiver of Right to Arbitrate**

Defendants' limited involvement in this case is not sufficient to find waiver of the right to arbitrate. See e.g. Creative Solutions Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (discussing factors courts consider in determining whether waiver has occurred).  Defendants have only filed a motion to dismiss and prepared initial disclosures pursuant to Fed. R. Civ. P. 26(a).  Thus, it could hardly be said that the "litigation machinery has been substantially invoked" nor that the parties were "well into preparation of a lawsuit by the time an intention to arbitrate was communicated." Jones Motor Co., Inc. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of N.H., 671 F.2d 38, 44 (1st Cir. 1982)(quoting Reid Burton Construction, Inc. v. Carpenters Dist. Council, 614 F.2d 698 (10th Cir. 1980)).  In fact, plaintiff does not even assert that defendants have waived their rights to arbitrate nor that he has been prejudiced by a delay in such a request.  Thus, the Court finds that the third prong is satisfied.  Defendants' motion to compel arbitration will be allowed.  In light of this holding the case will be stayed pending arbitration.

**ORDER**

In accordance with the foregoing,

1) defendants' motion to dismiss (Docket No. 16) is **DENIED,**

2) defendants' motion to compel arbitration (Docket No. 34) is **ALLOWED,**

3) the case is **STAYED** pending arbitration, and

4) plaintiff's motion to enlarge time to respond to defendant's motion to compel arbitration (Docket No. 37) is **DENIED** as moot.

**So ordered.**

                                    /s/ Nathaniel M. Gorton  
                                    Nathaniel M. Gorton  
                                    United States District Judge

Dated May 23, 2013